IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN VILLANUEVA, III, : Civil No. 3:13-CV-64
:
Plaintiff :
:
: (Judge Mariani)
v. :
: (Magistrate Judge Carlson)
:
LYCOMING COUNTY PRISON :
OWNER/OWNERS, et al., :
:
Defendants. :

# REPORT AND RECOMMENDATION

## I. Statement of Facts and of the Case

The plaintiff, a county prison inmate who is proceeding *pro se*, commenced this action by filing a complaint on January 10, 2013. (Doc. 1.) Villanueva's complaint alleges that 33 months ago, on May 5, 2010, the plaintiff became involved in an affray with a correctional officer at the Lycoming County Prison, defendant Jonathan Thompson. Villanueva alleges that he was prosecuted for his role in this affray, but was not convicted, and recites that he was held in restricted housing, under severe conditions, for 11 months while this criminal case was pending.

On the basis of these allegations, Villanueva seeks to sue the correctional officer allegedly involved in this May 2010 fight, Officer Thompson, the warden at

1

the prison, defendant Kevin DeParlos, the deputy warden at the prison, Bradley Shoemaker, and an entity he refers to as "Lycoming County Prison, owner/owners." With respect to these institutional and supervisory defendants the articulated bases for Villanueva's complaint are: (1) that these officials are "responsible for making sure that every inmate is housed . . . safely"; and (2) these officials approved the plaintiff's prison housing while this prosecution was pending.

Along with this complaint, Villanueva has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) For the reasons set forth below, we will grant this motion for leave to proceed *in forma pauperis* (Doc. 2.) but recommend that the Court dismiss certain claims and defendants from the complaint for failure to timely state a claim upon which relief can be granted, without prejudice to allowing the plaintiff to attempt to correct the deficiencies noted in this complaint by filing a proper amended complaint.

**II. Discussion**

**A. Screening of *Pro Se* Prisoner Complaints–Standard of Review**

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim

upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that,

4

because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's

5

entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must comply with the statute of limitations, and recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this complaint, in its present form, is subject to summary dismissal.

**B.  With Respect to Any Claims Which Pre-date January 10, 2011, The Current Complaint Fails to Meet the Pleading Standards Prescribed by Law Because The Claims Set Forth in the Complaint Are Barred by the Statute of Limitations**

At the outset, judged against these standards, many of the allegations set forth in the current *pro se* complaint fail to state claims within the period of the statute of limitations which governs these civil rights complaints. In particular, claims involving an alleged assault committed by defendant Thompson in May 2010, some 33 months ago, appear on the face of the complaint to be time-barred. In this regard, when conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations. As the United States Court of Appeals for the Third Circuit recently explained when it affirmed the screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006);

7

see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court 260 F. App'x 454, 455 (3d Cir. 2008);

see also Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009);

Hurst v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008). Applying these standards, the Court finds that many of the allegations in this *pro se* complaint are apparently subject to dismissal on statute of limitations grounds. Specifically, this complaint–which alleges misconduct by government actors beginning in May of 2010 and concluding eleven months later, in April, 2011–was first filed on January 10, 2013, more than two years after the first of the events complained of by Villanueva. Therefore, any allegations set forth in the complaint which pre-date January 2011, would be time-barred by the two year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute

of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995). While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry,

> we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Villanueva first complains about a May 5, 2010, staff assault by defendant Thompson. Indeed, this appears to be Villanueva's primary complaint. However, the factual narrative set forth in the complaint plainly reveals that Villanueva immediately attached a high degree of significance and permanence to these May 2010 events set forth in this complaint. Thus, Villanueva recites well-pleaded facts in his complaint which clearly reveal that, to the extent these May 2010 events entailed violations of the plaintiff's constitutional rights those violations were known and recognized by Villanueva when they occurred. Furthermore, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights. Therefore, in this case a

straightforward application of the two-year statute of limitations appears to compel dismissal of the claims which pre-date January 2011 as untimely.

It is unclear whether the plaintiff can save these time-barred claims by resort to the continuing violation theory since that tolling doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998). However, out of an abundance of caution, it is further recommended that any dismissal of these apparently time-barred claims be without prejudice to the plaintiff endeavoring to state well-pleaded facts which would toll the operation of the statute of limitations. In this regard, though, the plaintiff is advised that the statute of limitation on claims for false arrest and excessive force claims typically accrues on the date that the plaintiff was assaulted or arrested and charges were filed against him, as the Supreme Court has held that claims for false arrest or false imprisonment run "at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397 (2007) (false arrest and false imprisonment); Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998). Therefore, a pending criminal case, standing alone, typically is not an event which automatically tolls this civil statute of limitations.

### C. Villanueva Has Failed to State Viable Claims Against The Supervisory Defendants or County Prison Based Solely Upon Their Oversight of the Prison

Villanueva has also named the warden, deputy warden, and an unnamed "owner" of the county prison as defendants, but his legal and factual support for those claims is both sparse and inadequate, consisting largely of allegations that (1) these officials are "responsible for making sure that every inmate is housed . . . safely"; and (2) these officials approved the plaintiff's housing while this prosecution was pending. In their current form, many of these supervisory liability claims fail as a matter of law. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of

personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

Here, as to these supervisory defendants, the complaint bases liability, in large measure, on their supervisory status without further, specific and well-pleaded fact describing their involvement in this matter. This cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)[1]

---

[1] We note, however, that to the extent that Villanueva may be able to allege that defendants deliberately housed him under inhumane conditions he may state an Eighth Amendment conditions of confinement claim. However, "[w]hen an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate

Finally, the complaint names a curious institutional/supervisory defendant, the "Lycoming County Prison, owner/owners." To the extent that Villanueva attempts to bring a lawsuit against the county prison as an institution the plaintiff may not maintain a prisoner civil rights action against this particular defendant. Rather, inmate civil rights actions under 42 U.S.C. §1983 may be brought against: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983 (emphasis added). Thus, §1983 limits liability to persons who violate constitutional rights, a limitation that courts have construed as not reaching county jails as institutions. In short, " the 'County Jail' is

---

was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995."Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that: "The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)." Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003). Therefore, any dismissal of these supervisory liability claims should be without prejudice to the plaintiff attempting to allege well-pleaded facts which meet this constitutional benchmark.

not a proper defendant in this § 1983 case[], because it is not a 'person.' See Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J.1989)(stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (D.C.Pa.1976); see also Marsden v. Federal BOP, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a 'person' under § 1983); McCoy v. Chesapeake Correctional Center, 788 F.Supp. 890, 893-94 (E.D.Va.1992) (local jail not a 'person' under § 1983)." Crooks v. Passaic County Sheriff's Dep't/Jail, CIV. 07-0092 (FSH), 2007 WL 923330 (D.N.J. Mar. 26, 2007). See also, Thomas v. Wilbert, CIV.A. 09-4796 GEB, 2011 WL 91001 (D.N.J. Jan. 11, 2011)("County Correctional Institution is not a proper defendant in a § 1983 case and must be dismissed from this action").

This limitation on the reach of proper defendants in an Eighth Amendment claim compels dismissal of this claim, as stated in this *pro se* complaint, with respect to the county jail, which is not a proper defendant in a civil rights action brought under §1983.

### D. The Complaint Should be Dismissed Without Prejudice

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint setting forth well-pleaded claims within the period of the statute of limitations. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court, by filing an amended complaint containing any timely and proper claims which he may have.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 2.), but

that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of January 2013.

                                                  *S/Martin C. Carlson*
                                                  Martin C. Carlson
                                                  United States Magistrate Judge